JULIA C. RIECHERT (STATE BAR NO. 254078)
Jriechert@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

KATIE E. BRISCOE (STATE BAR NO. 287629)
kbriscoe@orrick.com
LAUREN LEIBOVITCH (STATE BAR NO. 323230)
lleibovitch@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497
Telephone: +1 916 447 9200
Facsimile: +1 916 329 4900

Attorneys for Defendant
SPRING CARE, INC. D/B/A SPRING HEALTH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDICE GIVENS OMAR, on behalf of herself and all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>SPRING CARE, INC., a Delaware corporation, SPRING HEALTH, a business entity of unknown form; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:26-cv-08729<br><br>**DEFENDANT SPRING CARE, INC. D/B/A SPRING HEALTH'S NOTICE OF REMOVAL** |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Spring Care, Inc., d/b/a Spring Health[1] files this Notice of Removal pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453 to effect removal of the above-captioned action, which commenced in the Superior Court of the State of California in the County of Ventura. The removal is proper for the reasons stated below:

## I. BACKGROUND

1. On July 2, 2026 in the Superior Court of California for the County of Ventura, Plaintiff Candice Givens Omar filed a Complaint entitled "*Candice Givens Omar, on behalf of herself and all others similarly situated, and the general public, Plaintiff, v. Spring Care, Inc., a Delaware corporation, Spring Health, a business entity of unknown form; and Does 1 through 50, inclusive, Defendants,* Case No. 2026CUOE069262" ("the Action"). ***See* Exhibit 1**, Complaint.

2. The Complaint asserts eight causes of action against Defendant on a class-wide basis on behalf of certain California employees for: (1) failure to pay minimum and overtime wages (Labor Code §§ 223, 510, 1194, 1194.2, 1197, 1197.1 and 1198); (2) failure to provide meal periods (Labor Code §§ 204, 223, 226.7, 512 and 1198); (3) failure to provide rest periods (Labor Code §§ 204, 223, 226.7 and 1198); (4) failure to pay vacation wages (Labor Code § 227.3); (5) failure to indemnify (Labor Code § 2802); (6) unfair competition (Business and Professions Code §§ 17200 *et seq*); (7) failure to provide accurate written wage statements (Labor Code § 226(a)); and (8) failure to timely pay all final wages (Labor Code §§ 201, 202 and 203). *See generally* Complaint.

[1] Plaintiff's Complaint names "Spring Health, a business entity of unknown form" as a defendant separate from Spring Care, Inc. Spring Health is not a separate entity; it is the trade name (d/b/a) under which Spring Care, Inc. operates. Spring Care, Inc. is the only defendant properly named in this action.

3. As explained in detail below, Plaintiff contends that Defendant maintained a "common policy and practice" of "systemically" violating the Labor Code, and "applied centrally devised policies and practices" to Plaintiff and putative class members "with respect to working conditions and compensation arrangements." Complaint ¶¶ 22, 50. Among other things, Plaintiff alleges Defendant failed to pay Plaintiff and putative class members for all hours worked, including by implementing an unlawful time-rounding policy and requiring off-the-clock work. *Id.* ¶¶ 22-24; *see id.* ¶¶ 52-54. Plaintiff also alleges Defendant failed to provide Plaintiff and putative class members with lawful duty-free meal and rest periods or premium pay in lieu thereof. *Id.* ¶¶ 25-28; *see id.* ¶¶ 66-70, 79-81. Plaintiff further alleges that Defendant failed to pay Plaintiff and putative class members all vested vacation wages and necessary business expense reimbursements, *id.* ¶¶ 29-30; *see id.* ¶¶ 87, 92-93, failed to provide them with accurate itemized wage statements, *id.* ¶¶ 31-36; *see id.* ¶¶ 118-121, and failed to timely pay them all wages due and owing upon separation of employment, *see id.* ¶¶ 123-130.

4. On July 7, 2026, Defendant was personally served with the Summons and Complaint. ***See* Exhibit 7**, Proof of Service of Summons. This Notice of Removal is timely because this Notice is filed within 30 days after service of the Complaint. 28 U.S.C. § 1446(b).

5. In compliance with 28 U.S.C. § 1446(a), attached hereto as **Exhibits 1-10** are copies of the state-court papers served herein, including copies of all process, pleadings, and orders served upon Defendant.

## II. CLASS ACTION FAIRNESS ACT JURISDICTION

6. Defendant removes this action based upon the Class Action Fairness Act of 2005, codified in 28 U.S.C. § 1332(d) ("CAFA"). This Court has original jurisdiction of this action under § 1332(d)(2). As set forth below, this action is

removable pursuant to 28 U.S.C. § 1441(a) because (1) it is a class action in which at least one class member is a citizen of a state different from that of any one defendant, (2) the proposed classes in the aggregate exceed 100 members, and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(A). No defendant identified in the Complaint is a state, officer of a state, or a governmental agency. 28 U.S.C. § 1332(d)(5).

**A. Minimal Diversity is Satisfied**

7. CAFA's minimal diversity requirement is satisfied here because at least one member of the putative class is a citizen of a different state from that of one defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). Specifically, Plaintiff is a citizen of a state (California) that is different from that of Defendant (Delaware and New York). *See* Complaint ¶¶ 5, 6.

8. **Plaintiff's Citizenship.** Plaintiff alleges she "is, and at all relevant times mentioned herein, an individual residing in the State of California." Complaint ¶ 5. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Domicile is determined by an individual's residence and intent to remain indefinitely. *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002). Residence is *prima facie* the domicile. *See Ayala v. Cox Automotive, Inc.*, No. CV 16-06341-GHK (ASx), 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (allegation that Plaintiff "is, and at all times mentioned in the Complaint was," a California resident "gives rise to a presumption that Plaintiff is a California citizen"). Place of employment is also an important factor weighing in favor of citizenship. *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Therefore, Plaintiff is a citizen of California.

9. **Defendant's Citizenship.** For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State

where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (adopting "nerve center" test to determine corporation's principal place of business). The proper inquiry is to determine a corporation's "center of overall direction, control and coordination." *Id.*

10. Defendant is now, and was at the time of the filing of the Complaint, a corporation incorporated under the laws of the State of Delaware. Complaint ¶ 6. Defendant's principal place of business is currently, and was at the time of filing of the Complaint, in New York, New York, where its corporate headquarters is located. Therefore, Defendant is a citizen of Delaware and New York for the purposes of determining diversity of citizenship.

11. **Doe Defendant's Citizenship.** The citizenship of fictitiously named defendants does not affect CAFA jurisdiction. CAFA requires only minimal diversity—that "any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A), which is satisfied here regardless of any Doe's citizenship. In any event, the citizenship of defendants sued under fictitious names is disregarded on removal. *See* 28 U.S.C. § 1441(b)(1); *see also Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989), *cert. denied*, 493 U.S. 1076 (1990); *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002).

### B. The Proposed Classes Exceed 100 Members

12. CAFA's requirement that proposed class members be no less than 100 under 28 U.S.C. § 1332(d)(5)(B) is satisfied where the alleged putative class has more than 100 members in the aggregate.

13. In the complaint, Plaintiff seeks to represent several overlapping classes and subclasses comprising of employees employed by Defendant in

California during the applicable statutory periods. *See* Complaint ¶ 13. A preliminary analysis of Defendant's records shows that Defendant has employed approximately 321 individuals in California from July 2, 2022 to the present who fall within one or more of these proposed classes—comprising approximately 91 non-exempt employees and 230 exempt employees. This aggregate total exceeds the 100-member threshold under 28 U.S.C. § 1332(d)(5)(B).

**C. The Amount in Controversy Exceeds $5,000,000**

14. CAFA's requirement that the aggregate claims of the individual members of a putative class, or the amount in controversy, exceed $5,000,000, exclusive of interest and costs, is similarly satisfied here. 28 U.S.C. § 1332(d)(6).

15. Defendant denies Plaintiff's claims in their entirety and asserts that Plaintiff's claims are not amenable to class treatment. Defendant provides the following analysis of potential damages without admitting liability based on the allegations in Plaintiff's Complaint for jurisdictional purposes only and to demonstrate that Plaintiff's Complaint puts a sufficient amount "in controversy" to warrant removal under 28 U.S.C. § 1332(d). Nothing herein waives any of Defendant's defenses or arguments against the substantive merits of this action.

16. Plaintiff seeks to recover, on behalf of herself and the putative classes and subclasses, among other things: unpaid wages and overtime, actual damages, liquidated damages, unreimbursed expenses, restitution, declaratory relief, pre-judgment interest, statutory penalties, cost of suit, and attorneys' fees based on the allegations that Defendant violated various wage-and-hour laws. *See* Complaint, Prayer for Relief.

17. Plaintiff's Complaint is silent as to the total amount of damages claimed. When the amount in controversy is not readily apparent from a complaint, "the court may consider facts in the removal petition" to determine the potential damages at issue. *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)

(*quoting Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). A defendant must provide "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197-98 (9th Cir. 2015) ("[A] defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal."). The defendant's amount in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court. *Dart*, 574 U.S. at 87. Thus, Defendant is only required to establish that it is plausible that the amount in controversy exceeds $5,000,000.

18. Statutory penalties may be considered by the Court when determining the amount in controversy. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000); *Korn v. Polo Ralph Lauren*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met"). The Court should also include requests for attorneys' fees in determining the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

19. An initial review of Defendant's records shows that, from July 2, 2022 to the present, Defendant employed approximately 321 individuals in California. Of these, approximately 91 were non-exempt employees and approximately 230 were exempt employees.

20. The 91 non-exempt employees worked approximately 6,920 full-time workweeks at an average hourly rate of $36.86 and approximately 950 part-time workweeks at an average hourly rate of $104.83, for a combined total of approximately 7,870 workweeks at an average hourly rate of $45.07.

21. The 230 exempt employees worked approximately 18,422 workweeks from July 2, 2022 to the present at an approximate average hourly rate of $78.51.

22. **Alleged failure to pay minimum and overtime wages.** Plaintiff's first cause of action alleges Defendant had a "common policy and practice of systematically failing to pay Plaintiff and [non-exempt putative class members] proper wages and overtime for all hours worked, at the proper rates." Complaint ¶ 52. Plaintiff's minimum wage and overtime claim is based on two theories of liability. First, Plaintiff alleges Defendant employed an auto-deduct policy that automatically deducted either 30 or 60 minutes from employees' daily time and resulted in unlawful rounding that "systemically" undercompensated them. *Id.* ¶¶ 22, 52. Second, Plaintiff alleges employees were "consistently required to perform work, off-the-clock, for which they were not paid wages" due to "understaffing and heavy workloads." *Id.* ¶ 53.

23. Plaintiff alleges that this uncompensated time "caused Plaintiff and [putative class members] to work in excess of eight (8), ten (10), and twelve (12) hours a day and/or forty (40) hours a week," entitling them to overtime and double-time wages under Labor Code section 510, which they were "systemically denied." *Id.* ¶ 54; *see id.* ¶ 49. As a result, Plaintiff seeks to recover unpaid straight time, overtime wages, double-time wages, liquidated damages, among other things, for work performed during the four-year period preceding the filing of the Complaint. *Id*. ¶¶ 1(a)-(c),13, 42, 56.

24. Based on Plaintiff's allegations of a common policy and practice, Defendant conservatively assumes that full-time non-exempt putative class members worked only 1.5 hours of unpaid overtime per workweek, and 15 minutes of double-time every other workweek. Accordingly, Plaintiff's claim for unpaid overtime and double-time wages puts at least **$637,678** in controversy ($573,910 for overtime [6,920 full-time workweeks × 1.5 hours × $36.86 × 1.5 overtime

multiplier = $573,910] + $63,768 for double-time [7.5 minutes ÷ 60 minutes × 2 double-time multiplier × $36.86 × 6,920 full-time workweeks = $63,768]).

25. Plaintiff's claim for unpaid minimum wages for off-the-clock work by part-time non-exempt employees puts at least **$99,589** in controversy (950 workweeks × 1 hour × $104.83 = $99,589), plus an equal amount in liquidated damages that Plaintiff expressly seeks under Labor Code section 1194.2, Complaint ¶ 56; *id.*, Prayer for Relief ¶ f, totaling an additional **$99,589**.

26. Thus, Plaintiff's first cause of action for unpaid wages and overtime places at least **$836,856** in controversy ($637,678 [unpaid overtime and double-time] + $99,589 [unpaid minimum wages] + $99,589 [liquidated damages] = $836,856).

27. **Alleged failure to provide meal periods.** Plaintiff's second cause of action alleges Defendant failed to provide Plaintiff and non-exempt putative class members with duty-free meal periods as required by the Labor Code and applicable IWC Wage Order. Complaint ¶¶ 58-72.

28. Plaintiff alleges that Defendant "maintained a policy or practice of not providing Plaintiff and [putative class members] with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period," as required by California law. Complaint ¶ 66. Specifically, Plaintiff alleges she and putative class members were (i) "prohibited from leaving the work premises during meal periods, when such meal periods were taken"; (ii) "denied" the opportunity to take timely meal periods due to "heavy workloads"; (iii) not relieved of all work duties during unpaid meal periods and were "required" to keep working during meal breaks"; (iv) "not provided the opportunity to take second meal periods when they worked shifts above 10 hours, at all"; (v) subject to an auto-deduct policy that automatically deducted either 30 or 60 minutes from their daily time and resulted in unlawful rounding. *Id.* ¶ 66.

29. Based on Plaintiff's allegations of meal period violations, including the allegations of an unlawful policy of requiring on-premise meal periods, Defendant assumes full-time non-exempt putative class members experienced five noncompliant meal periods per workweek, and part-time non-exempt putative class members experienced one noncompliant meal period per month. Using the full-time and part-time non-exempt workweeks and the average hourly rates, the total amount of meal premiums puts at least **$1,298,593** in controversy ($1,275,356 for full-time non-exempts [6,920 workweeks × 5 violations × $36.86 average hourly rate = $1,275,356] + $23,237 for part-time non-exempts [950 workweeks × 7 days per week ÷ 30 days per month × 1 violation × $104.83 = $23,237]).

30. **Alleged failure to provide rest breaks.** Plaintiff's third cause of action alleges that Plaintiff and other non-exempt putative class members were not authorized and permitted to take legally compliant rest breaks as required by the Labor Code and applicable IWC Wage Order. Complaint ¶¶ 73-83.

31. Plaintiff alleges that Defendant "had a common policy and practice of systemically denying [putative class members] the opportunity to take rest periods in compliance with California law. Complaint ¶ 27. Specifically, Plaintiff alleges (i) Defendant had a "policy of not scheduling each rest period as part of each work shift"; (ii) Defendant had "no formal compliant written rest period policy that encouraged employees to take their rest periods, or that properly advised Plaintiff and [putative class members] of their rest period rights"; and (iii) Defendant had a "policy and practice" of requiring putative class members to continue working through their rest breaks due to the excessive workload." *Id.* ¶¶ 27, 80.

32. Based on Plaintiff's allegations of rest period violations, Defendant assumes that full-time non-exempt putative class members experienced three noncompliant rest periods per workweek, and part-time non-exempt putative class members experienced 1.5 noncompliant rest periods per workweek. The total

amount of rest break premiums puts at least **$914,597** in controversy ($765,214 for full-time non-exempts [6,920 workweeks × 3 violations × $36.86] + $149,383 for part-time non-exempts [950 workweeks × 1.5 violations × $104.83]).

33. **Alleged failure to pay vacation pay.** Plaintiff's fourth cause of action alleges that Defendant failed to pay Plaintiff and non-exempt and exempt putative class members for all accrued vacation time and/or paid time off upon separation of employment in violation of Labor Code section 227.3. Complaint ¶¶ 84-89. Specifically, Plaintiff alleges that Defendant had a "common policy and practice" of failing to pay all accrued vacation wages, and seeks "all unpaid amounts due and owing." *Id.* ¶¶ 87-88.

34. Unlike the claims for unpaid wages, meal periods, and rest periods described above, the claim for vacation pay is not limited to non-exempt employees; accordingly, the amount in controversy calculation includes both exempt and non-exempt terminated employees. According to Defendant's records, approximately 38 full-time non-exempt California employees, 4 part-time non-exempt employees, and 100 exempt employees separated from their employment with Defendant from July 2, 2022 to the present. Conservatively estimating that each employee is owed 8 hours of unpaid vacation pay at the approximate average rate of pay, puts at least **$77,368** in controversy ($11,205 for full-time terminated employees [38 employees × 8 hours × $36.86] + $3,355 for part-time terminated employees [4 employees × 8 hours × $104.83] + $62,808 for exempt terminated employees [100 employees × 8 hours × $78.51]).

35. **Alleged failure to reimburse business expenses.** Plaintiff's fifth cause of action alleges Defendant failed to indemnify Plaintiff and non-exempt and exempt putative class members for work-related business expenses in violation of Labor Code section 2802. Complaint ¶¶ 90-92. Specifically, Plaintiff alleges that putative class members (i) "were required to use their personal cell phones for

work-related activities such as logging in through two-factor authentication and contacting emergency services"; and (ii) "were required to work from home and were not reimbursed for their home internet costs." *Id.* ¶¶ 30, 92.

36. Based on Plaintiff's allegations, Defendant assumes unreimbursed cell phone and home internet expenses of $66.11 per month for all employees.[2] This puts at least **$405,572** in controversy (7,870 non-exempt workweeks + 18,422 exempt workweeks = 26,292 total workweeks, converted to approximately 6,135 months at 30 days per month, multiplied by $66.11 per month = $405,572).

37. **Alleged failure to provide accurate written statements.** Plaintiff's seventh cause of action is for failure to provide Plaintiff and non-exempt and exempt putative class members with accurate written wage statements. Complaint ¶¶ 115-122. She alleges that Defendant (i) failed to provide Plaintiff and putative class members with written, paper wage statements and (ii) issued wage statements to Plaintiff and putative class members that failed to account for unpaid minimum wages, overtime, and premium pay. *Id.* ¶¶ 118-119. Plaintiff further alleges that Defendant's "failure to provide Plaintiff and [putative class members] with accurate written wage statements was intentional[,]" and that Defendant is liable for damages and statutory penalties. *Id.* ¶¶ 120, 122; *see also* Lab. Code § 226(e) (penalty of $50 for the initial pay period in which a violation occurs, $100 for subsequent violations, with a maximum penalty of $4,000 per employee); Cal. Code Civ. Proc. § 340(a) (statute of limitations is one year).

38. For the period of July 2, 2025 through the present, there are approximately 227 putative class members who worked approximately 4,385 pay

---

[2] This figure is derived from the U.S. Bureau of Labor Statistics' Consumer Price Index data. Averaging the CPI-reported monthly cost for wireless telephone services over 2025 yields approximately $46.50 per month, and averaging the CPI-reported monthly cost for internet services over the same period yields approximately $85.72 per month, for a combined average of $132.22 per month. This figure is reduced here by 50% to account for the possibility that not all such usage was work-related, yielding $66.11 per month.

periods. None of these putative class members has been employed for more than 40 pay periods (and as such, none has reached the $4,000 maximum penalty under Labor Code section 226(e)). Plaintiff's claim for wage statement penalties would result in an amount in controversy of **$427,150** (227 initial violations × $50 + 4,158 subsequent violations × $100 = $427,150).

39. **Alleged waiting time penalties.** Plaintiff's eighth cause of action seeks waiting time penalties on behalf of herself and non-exempt putative class members under Labor Code section 203. Complaint ¶¶ 123-131. Plaintiff alleges that Defendant "maintained a policy or practice of paying [putative class members] their final wages without regard to the requirements of Labor Code sections 201 or 202," and that Defendant's failure to timely pay final wages "has been willful" because Defendant "intentionally adopted policies or practices that are incompatible with" the Labor Code's final-wage requirements. *Id.* ¶¶ 128-129. Plaintiff seeks waiting time penalties "up to a maximum of thirty days." *Id.* ¶ 130; *see* Lab. Code § 203 (Section 203 provides for up to 30 days' wages as a "waiting time" penalty for employers who willfully fail to pay wages owed upon separation); *see also Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1396 (2010) (Section 203 penalties are governed by a three-year statute of limitations).

40. According to Defendant's records, approximately 28 full-time non-exempt California employees and 4 part-time non-exempt employees separated from their employment with Defendant from July 2, 2023 to the present. Conservatively estimating that each of those full-time employees worked an average of only 8 hours per day at the approximate average full-time hourly rate of $36.86, and each part-time employee worked only 5 hours per day at the approximate average part-time hourly rate of $104.83, Plaintiff's claim for waiting time penalties puts at least **$310,597** in controversy ($247,699 for full-time

terminated employees [28 employees × 8 hours × $36.86 × 30 days] + $62,898 for part-time terminated employees [4 employees × 5 hours × $104.83 × 30 days]).

41. **Attorneys' fees.** Plaintiff's complaint also seeks attorneys' fees, which are provided by statute and in the Ninth Circuit typically are 25% of any judgment in favor of the plaintiff. Complaint, Prayer for Relief; *see, e.g.*, *Serrieh v. Jill Acquisition LLC*, 2023 WL 8796717, at *7 (E.D. Cal. Dec. 20, 2023) ("[t]he benchmark for class action attorneys' fees in the Ninth Circuit is 25%, "with 20-30% as the usual range"); *Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, at *13 (N.D. Cal., June 14, 2013) (for CAFA amount in controversy, adding 25% of the amount in controversy on the claims for relief to account for attorneys' fees); *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). Including potential attorneys' fees increases the amount in controversy by an additional **$1,067,683** ($4,270,733 amount in controversy x 0.25 = $1,067,683).

42. As the calculations above demonstrate, there is well over $5,000,000 in controversy in this action: $836,856 (unpaid minimum and overtime wages) + $1,298,593 (meal period premiums) + $914,597 (rest break premiums) + $77,368 (vacation pay) + $405,572 (unreimbursed business expenses) + $427,150 (penalties for inaccurate wage statements) + $310,597 (waiting time penalties) + $1,067,683 (attorneys' fees) = **$5,338,416**. CAFA's amount-in-controversy requirement is satisfied.

43. In sum, this Court thus has original jurisdiction over this Action under CAFA, and this Action may be removed to this Court pursuant to 28 U.S.C. § 1332(d).

## III. VENUE

44. Venue lies in the Central District of California pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 84(c). This action was originally brought in the Superior

Court of the State of California, County of Ventura, which is embraced by the Western Division of the Central District of California.

## IV. NOTICE OF REMOVAL

45. This Notice of Removal shall be served promptly on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of Ventura pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California for the County of Ventura to the United States District Court for the Central District of California.

Dated: August 6, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *_/s/ Katie E. Briscoe_*

Julia Riechert
Katie E. Briscoe
Lauren Leibovitch
Attorneys for Defendant
SPRING CARE, INC. D/B/A SPRING HEALTH